Julius C. HENRY, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

Glenn D. WEBERMEIER and Garden Village, Inc., Defendants-Appellees, Cross-Appellants.

Nos. 83–2228, 83–2349.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1984.

Decided June 19, 1984.

Percy L. Julian, Jr., Julian & Olson, Madison, Wis., for plaintiffs-appellants.

Roger D. O'Neal, O'Neal, Noll, Elliott, Forbeck & Iglesias, Beloit, Wis., for defendants-appellees.

Before ESCHBACH and POSNER, Circuit Judges, and MARSHALL, District Judge.*

POSNER, Circuit Judge.

These appeals bring up to us a number of interesting questions relating to the calculation of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The underlying case is a class action on behalf of people harmed as a result of housing discrimination in an area of Beloit, Wisconsin known as Garden Village. Defendant Webermeier (the corporate defendant is his alter ego) is a builder and real estate broker in Garden Village who, according to the complaint, tried with considerable success to prevent black people from moving into the Village. The case was settled before trial by the entry of a consent decree which provides very stringent injunctive relief, requires the defendants to pay the class a total of $45,000 in damages, and also provides (in paragraph 35) that "Defendants shall pay plaintiffs' attorneys' fees, disbursements and costs in an amount to be determined by" the district court. The plaintiffs moved the district judge for an award of $96,301.29 in attorneys' fees, consisting of $67,184.50 for lawyers' time (538.17 hours of lawyer Julian's time, at $100 an hour; three hours of lawyer Olson's time, at $80 an hour; and 262.55 hours of lawyer Aronson's time, at $50 an hour), and $29,116.79 in out-of-pocket expenses incurred for investigation, travel, and other activities related to case preparation, of which $5,378.87 represented costs taxable under 28 U.S.C. § 1920. The district judge held that the plaintiffs were not entitled to reimbursement of any out-of-pocket expenses other than statutory costs. The judge also cut down Julian to $75 an hour, Olson to $50, and Aronson to $40. This plus the disallowance of most expenses resulted in an award of attorneys' fees of $51,014.75, compared to the $90,922.42 that the plaintiffs had sought besides statutory costs. The plaintiffs have appealed. Webermeier has filed a cross-appeal, asking us, should we reverse the district court's award, to remand with directions that the district court reconsider whether the plaintiffs should be awarded any attorneys' fees at all.

The plaintiffs argue that, quite independently of the Civil Rights Attorney's Fees Awards Act, the reference in paragraph 35 of the consent decree to "disbursements and costs" gave them a contractual right to reimbursement of their out-of-pocket expenses. This is a plausible and maybe even correct view, especially given the amount of disbursements in this case; but against it must be set the subsequent words of paragraph 35, "in an amount to be determined by" the district court. This could be read to allow the court to disallow an entire category—such as "disbursements"—of claimed legal expenses. On this reading the purpose of paragraph 35 is purely procedural: to make clear that the award of attorneys' fees and related expenses is not part of the consent decree but is reserved for a separate, adversary proceeding.

If instead paragraph 35 is read to substitute a contractual for a statutory obligation, the knotty question arises, what standard is the district judge to apply in determining how much to award in each category? The plaintiffs themselves, when they argue for higher hourly rates, treat the issue as one under the Civil Rights Attorney's Fees Awards Act rather than paragraph 35; but if this is right, it would seem that their entitlement to out-of-pocket expenses should equally be determined by the Act rather than by the decree. To read

* Hon. Prentice H. Marshall of the Northern District of Illinois, sitting by designation.

paragraph 35 as meaning that the plaintiffs' entitlement to attorneys' fees (narrowly defined) should be determined by the standards of the Civil Rights Attorney's Fees Awards Act, but that in addition they should be entitled to their disbursements irrespective of the Act, seems strained. Probably, therefore, paragraph 35 should be treated as incorporating the statutory standard rather than as giving the district court an uncanalized discretion. This is the usual approach taken, though without discussion of the question. See *Johnson v. University College*, 706 F.2d 1205, 1206 (11th Cir.1983); *Ross v. Saltmarsh*, 521 F.Supp. 753, 756 and n. 7 (S.D.N.Y.1981), aff'd without opinion, 688 F.2d 816 (2d Cir. 1982).

But the question can be avoided here by noting that the Act itself entitles the plaintiffs to their lawyers' reasonable out-of-pocket expenses, and that nothing in the decree suggests that paragraph 35 was intended to give them less than their statutory rights. Although (so far as relevant here) the Act provides only that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs," the case law overwhelmingly supports the proposition that "attorney's fee" includes out-of-pocket expenses in preparation for trial. See, e.g., *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983); *Palmigiano v. Garrahy*, 707 F.2d 636 (1st Cir.1983) (per curiam); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1188–92 (11th Cir. 1983). We so held, though without extended discussion, in *Lenard v. Argento*, 699 F.2d 874, 900 (7th Cir.1983). The Act seeks to shift the cost of the winning party's lawyer (in cases within the intended scope of the Act) to the losing party; and that cost includes the out-of-pocket expenses for which lawyers normally bill their clients separately, as well as fees for lawyer effort. The Act would therefore fall short of its goal if it excluded those expenses. What is more, the line between fees and expenses is arbitrary. A lawyer's hourly billing rate includes many overhead expenses such as local telephone calls. It is impossible to believe that Congress would

have wanted prevailing parties to get back their lawyers' local telephone expenses (invariably included in the hourly fee) but not their long-distance expenses (invariably billed separately); or to get back their secretarial expenses—which are included in overhead and therefore billed as part of the lawyer's hourly rate rather than separately—but not the expenses of word processing, often billed separately to the client.

The defendants argue that the district judge's action can nevertheless be upheld as a proper exercise of the judicial discretion to which the Civil Rights Attorney's Fees Awards Act refers. Although that discretion is less than the words of the statute suggest—when the prevailing party is the plaintiff he is entitled to an award of attorney's fees almost as a matter of course, see, e.g., *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983)—the district judge can, of course, and should, disallow particular expenses that are unreasonable whether because excessive in amount or because they should not have been incurred at all. But it is apparent that the district judge made no such judgment here. Not only would it have been unreasonable to regard as unnecessary *all* of the plaintiffs' expenses that did not happen to be taxable costs, but the judge made clear that his refusal to award these expenses was based on his interpretation of the statute. He said, "This Court does not permit recovery of those out-of-pocket expenses and disbursements where not so provided. 28 U.S.C. § 1920 sets forth those items which the Clerk may tax as costs. Title VII and § 1988 provides only for 'reasonable attorney's fees,' which has been previously provided [a reference to the court's award of the $51,014.75]. The Court is aware of those other decisions which permit recovery outside the parameters established by Congress. This Court is not inclined to so permit and restricts its discretion to expand upon legislative pronouncements." Thus, mistakenly believing that he had no power to award the out-of-pocket expenses requested by the plaintiffs, the district judge

failed to evaluate the reasonableness of the request. The case must be remanded to enable him to make that evaluation.

The other question is whether the district court acted properly in cutting down the hourly billing rates of the plaintiffs' three lawyers. The defendants do not argue, and the judge did not find, that the number of hours put in by the lawyers, either singly or together, was excessive. The judge based his action on three other factors. The time for which the lawyers wanted payment included 54 hours of travel; and, "Rather than resort to unnecessarily complex computation, this Court has considered the relatively large amount of travel as a factor in determining the appropriate base rate." Also, since the case had been settled prior to trial, the lawyers had been spared "the stress and exertion of trial," as well as the greater challenge to their skills that a trial would have posed compared to settlement negotiations. And "the legal and factual issues in this case were not complex," since the defendants' violations had been conspicuous.

■ Our problem with the court's approach is that it lacked a starting point. The court did not say, "The market rate for each of these lawyers is $_____, and I will adjust it upward or downward by so much." Now a district judge need not always proceed by first determining the market rate for the services the lawyers rendered (i.e., the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question) and then adjusting that rate upward or downward for special factors. Although the proving up of market rates as the starting point for fee determination has become the standard method of proceeding in these cases, see, e.g., *Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984); *Ramos v. Lamm, supra*, 713 F.2d at 555, we do not want to make it the Procrustean bed to which every fee proceeding must be fitted despite its actual dimensions. Where only a few hundred or perhaps a few thousand dollars in attor-

ney's fees are being sought, a less elaborate submission may be quite acceptable. But in this case, which involved a large fee request, the plaintiffs' lawyers quite properly took the trouble of obtaining and putting into evidence a number of affidavits, none controverted, setting forth the market rates for southern Wisconsin civil rights trial lawyers with experience comparable to theirs, and establishing that the rates that they were asking were indeed market rates. The affidavits are, as so often is true, both stereotyped (some being almost word for word identical to others) and, as we shall see, summary. And there is a danger that lawyers who sign such affidavits will exaggerate their billing rates in order to establish a precedent that may help them some day—perhaps even in order to try to raise the market price of legal services. But while contesting the plaintiffs' fee requests with great vigor, the defendants have not questioned that the hourly rates asked by the plaintiffs' lawyers are the true market rates. Nor did the district judge question this, though as a recent practitioner in the same general market he would, we assume, have said something if he had found the affidavits implausible.

■ In these circumstances the hourly rates that the plaintiffs' lawyers submitted established a benchmark that the district judge was not free to ignore. If he wanted to give the lawyers less he had to give reasons justifying the particular cut that he wanted to impose—had to explain why he wanted to give Julian $25 an hour less (a 25 percent reduction), Olson $30 less (a 37.5 percent reduction), and Aronson $10 less (a 20 percent reduction). He did not give adequate reasons. He did not even explain whether he was starting from the market rates that the lawyers had proved, or why he reduced each of the lawyers' billing rates by a different percentage even though he gave the identical reasons for cutting down each.

■ Even if what he was doing was reducing the lawyers' billing rates below the market level because of special factors,

his decision cannot be upheld. Not only does his allocation of the percentage cuts among the three lawyers seem arbitrary, but his treatment of travel time was arbitrary. Suppose—improbably—that all of the travel was unnecessary and the lawyers should not be allowed to get a penny back for it. That would mean that instead of being allowed to bill for 803.72 hours they should have been allowed to bill for only 749.72 hours. All 54 hours of travel were by lawyer Julian, and his hourly rate is $100, a total of $5,400. But if $5,400 was therefore subtracted from the total amount ($67,184.50) that the lawyers requested for their time, the resulting fee—$61,784.50—would still be more than the judge awarded.

Moreover, to award nothing for travel time in this case would be unreasonable. As the defendants do not contend that the total number of hours that the plaintiffs' lawyers put in on the case was excessive, the travel time must have been worthwhile, and the only question therefore is the appropriate billing rate for it. Probably that is the same billing rate as would be appropriate for the other time the lawyers put in on the case. When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why lawyers invariably charge their clients for travel time, and usually at the same rate they charge for other time, except when they are able to bill another client for part of the travel time (a lawyer might do work for client A while flying on an airplane to a meeting with client B). And if they charge their paying clients for travel time they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorneys' fees. Of course, if the travel is unnecessary the time spent in travel should be subtracted out, cf. *Hensley v. Eckerhart, supra,* 103 S.Ct. at 1939–40; but that, as we have said, is not an issue here. If, though reasonable in terms of the amount of time consumed, the travel is unnecessarily luxurious, the court should

not reimburse the plaintiffs for the entire out-of-pocket expenses of travel; but that is a completely separate issue from the hourly billing rate and an issue that the defendants will be entitled to explore on remand. The presumption, which the defendants have not attempted to rebut, should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time.

Among the other factors that the judge used to reduce hourly billing rates here were the simplicity of the legal and factual issues in the case and the fact that the case was settled before trial. Whether these are good reasons for giving a lawyer less than the market rate depends on what that rate is based on. If it is an average of simple and difficult work, court work and office work, then presumably a very simple case would call for a reduction, and similarly a case that involved no litigation at all. But if it is a base billing rate—the rate for office work on simple cases—there should be no reduction for these factors; rather, there should be an increase if the case is unusually difficult or requires that time be spent in court. The affidavits that the plaintiffs' lawyers submitted to show the market rates for their services do not indicate whether the billing rates in the affidavits are base or composite rates. Therefore, assuming that this was not a difficult case and knowing that it involved no court time (except to prove attorneys' fees!), we do not know whether the market rates that the lawyers proved should be reduced. If they are base rates, they should not be reduced; if they are composite rates, they should be reduced, though maybe only slightly. Still another possibility is that they are average rates charged to all clients regardless of the actual difficulty of, or court time involved in, the work for a particular client. Maybe in that case no adjustment would be required. All these are matters for the district judge to explore on remand.

In noting that the appropriate rate for a case that goes to trial may be higher than the rate for a case settled before trial, we are not endorsing a method that creates incentives to litigate unnecessarily. For we are speaking here only of the starting point for the fee determination process. Because of the variable nature of a lawyer's work, and the custom of varying one's fee in accordance with the results obtained, a lawyer does not always charge the same hourly rate. Since the object of judicial fee determination is to simulate the results that would obtain if the lawyer were dealing with a paying client, the prevailing rate is only the starting point for judicial, as it is for contractual, fee determination. Once that rate for the legal service in question (an office rate, for office work, or a courtroom rate, for time in court), such as civil rights litigation, is determined, it can be moved up or down depending on other factors. If a plaintiff's lawyer avoids litigation through an advantageous settlement, that might warrant an upward adjustment in his office rate; and if he turned down a good settlement offer out of a stubborn desire to litigate, that would warrant a downward adjustment of his litigation rate. The defendants argue that the plaintiffs could have settled the case on the same terms as the ultimate consent decree if they had not made unreasonable demands at the outset. Superficially, this argument seems refuted by the defendants' concession that they are not challenging as excessive the number of hours that the plaintiffs' lawyers put in on the case. For if the plaintiffs protracted the case unreasonably by making unreasonable settlement demands, would this not mean that their lawyers put in too much time on the case, which, it is conceded, they did not? Not necessarily. While not spending much of his own time on the case a lawyer might, by delaying its resolution, subject his opponent to costly uncertainty and extra legal expense, and this would be a proper ground for penalizing the winner by cutting down the attorney's fee to which he would otherwise be entitled. True, this is the sort of thing lawyers do all the time, not always

properly, see Model Code of Professional Responsibility DR 7–102(A)(1) (1981); but it does not follow that the opposing party ought to be made to pay for the expense of having it done to him, rather than the lawyer's client having to pay. We need not resolve the issue whether anything of this sort happened here, without the benefit of the district court's findings; since the case must go back anyway, the issue should be addressed on remand.

To summarize, the district judge's award of attorneys' fees is set aside and the case returned to him (1) to determine the reasonableness of the out-of-pocket expenses incurred by the plaintiffs' lawyers, bearing in mind that the defendants do not contest the reasonableness of the total amount of time that the plaintiffs' lawyers put in on the case; (2) to determine whether the hourly rates that the lawyers asked the judge to approve—rates that we have found are true market rates—are base, composite, or average rates; (3) if composite, to determine whether, and if so by how much, the hourly rates should be reduced because the case was below average in difficulty, or because it required no courtroom time, or (if the district judge so finds) because the plaintiffs unreasonably refused, to the defendants' prejudice, to settle the case earlier; (4) and to determine a reasonable attorney's fees for the plaintiffs' efforts in this court to challenge the district court's fee award, and in the fee proceedings on remand. See *Muscare v. Quinn*, 680 F.2d 42 (7th Cir.1982). Webermeier's cross-appeal, however, is denied. The plaintiffs are entitled to attorneys' fees; the only question is the amount.

VACATED AND REMANDED.