**Jamal Ali AKBAR and Melvin Nalls, Plaintiffs-Appellants, Cross-Appellees,**

v.

**James FAIRMAN, Paul Hosier, Mary Catherine Noonan, Andres Martinez and Robert K. Hanson, Defendants-Appellees, Cross-Appellants.**

Nos. 85–1836, 85–2249.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 9, 1986.

Decided April 22, 1986.

As Amended April 23, 1986.

J. Steven Beckett, Reon O'Byrne & Kepley, P.C., Champaign, Ill., for plaintiffs-appellants, cross-appellees.

Thomas A. Ioppolo, Ill. Atty. Gen. Office, Chicago, Ill., for defendants-appellees, cross-appellants.

Before CUDAHY and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

The plaintiffs, Jamal Ali Akbar ("Akbar") and Melvin Nalls ("Nalls") filed separate 1983 actions against the defendants (officials and employees of the Illinois Department of Corrections) challenging the disciplinary procedures employed by the Pontiac Correctional Center ("Pontiac") Adjustment Committee.[1] Akbar and Nalls appeal from a judgment of the district court awarding Akbar and Nalls nominal damages for the procedural due process violations committed by the defendants, but denying them compensatory damages on the grounds that the disciplinary sanctions imposed upon them by the Pontiac Adjustment Committee were justified under the circumstances notwithstanding the technical due process violations. The defendants cross-appeal from the district court's award of attorney's fees pursuant to 42 U.S.C. § 1988, specifically challenging the awarding of the out-of-pocket expenses incurred by the plaintiffs in unsuccessfully petitioning the Supreme Court of the United States for writ of certiorari in a prior decision of this court. We affirm the district court's judgment denying the plaintiffs compensatory damages, but reverse the district court's award of expenses for the plaintiffs' unsuccessful petition for a writ of certiorari.

## I

While incarcerated in Pontiac, Jamal Ali Akbar and Melvin Nalls were both charged

---

1. The Adjustment Committee is comprised of three members of the Pontiac prison staff appointed by the prison's chief administrative officer. When an inmate is charged with committing a "major chargeable offense" (any offense which could result in removal from the general population, removal from a program, demotion in grade or loss of statutory good time/good conduct credits), the Adjustment Committee must conduct a hearing to determine whether or not the inmate committed the offense charged. Upon a finding of guilty, the Adjustment Committee may order an appropriate disciplinary sanction, including placing the inmate in segregation, recommending an increase in the inmate's security classification, recommending the revocation of the inmate's statutory good time or good conduct credits, or recommending a reduction of the inmate's grade. *See* Administrative Regulation 804.

with violations of prison regulations. A resident disciplinary report charged Akbar with the possession of gang related materials ("kites")[2] while performing his duties as a law clerk in the North Segregation Unit of Pontiac. Prison officials placed Akbar in segregation and three days later he appeared before the Adjustment Committee. The Committee found Akbar guilty of possessing gang related materials, returned him to segregation, and ordered a disciplinary job transfer. Upon further investigation, it was revealed that the materials found in Akbar's possession were religious in nature. Warden Fairman expunged the disciplinary report from Akbar's records and reinstated him to his position of law clerk. As a result of the disciplinary charge and the Adjustment Committee's action, Akbar spent a total of eight days in segregation.

Nalls received a resident disciplinary report charging him with assaulting another inmate, alleging that he stabbed a prisoner in the prison gymnasium shower. Following a hearing, the Adjustment Committee found Nalls guilty of the assault charge and sentenced him to one year in segregation, a one-year loss of good time credit, a one-year demotion to C-grade status[3], and the loss of audio-visual privileges.

Akbar and Nalls, along with five other Pontiac inmates, filed separate *pro se* actions under 42 U.S.C. § 1983 challenging the Adjustment Committee's procedures in conducting disciplinary hearings for prisoners charged with violations of prison regulations. The district court consolidated the actions and appointed counsel on behalf of the inmates. The plaintiffs filed an amended complaint alleging, *inter alia,* that the defendants violated the plaintiffs' due process rights in failing to give a complete and adequate summary of the evidence relied upon and the reasons for the Adjustment Committee's findings of guilt and the punishment imposed on the plaintiffs.[4] The amended complaint also alleged that certain members of the Adjustment Committee were not neutral and detached decisionmakers as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution due to their status as defendants in prior unrelated lawsuits filed by the inmates.[5] After both parties filed motions for summary judgment, the district court granted the plaintiffs' motion for summary judgment in part, concluding that the inadequacy of the Adjustment Committee Summaries denied the plaintiffs their due process rights.[6]

---

2. A "kite" is an unauthorized letter from one inmate to another.

3. The reference to a C-grade status refers to the Pontiac Prison's grading system in classifying its inmates in a particular status range. For example, a demotion to C-grade status imposed a reduction in this inmate's freedom within the prison in comparison to those prisoners who remain in A-grade status.

4. Administrative Regulation 804 requires that at an Adjustment Committee hearing, one member of the Committee record the proceedings (including the inmate's testimony, the disposition, the evidence relied on, and the basis for the decision) on a preprinted form titled Adjustment Committee Summary. With respect to Akbar, the Adjustment Committee Summary recited:
> "Based on resident's testimony and all evidence presented, the Committee's convinced that resident is guilty of carrying kites and unauthorized written material into the segregation unit and violated the trust in his law clerk position."

With respect to Nalls, the Adjustment Committee Summary stated:
> "Based on all evidence available, including the resident's statements and the report from D. Polizzi indicating resident Nalls was observed in the shower room area at the gym and the fact that resident Jones ... was assaulted, the Adjustment Committee is convinced that resident Nalls is guilty of assaulting another resident, creating a disturbance, unauthorized movement."

5. For example, Akbar alleged that defendant Paul Hosier (who was the chairman of the Adjustment Committee at Akbar's disciplinary hearing), could not be a neutral and detached decisionmaker since Hosier was named a defendant in a prior unrelated civil action filed by Akbar.

6. The district court reasoned that the Adjustment Committee Summaries were constitutionally inadequate in that they omitted the essential facts upon which the Adjustment Committee based inferences, failed to articulate reasons for giving credence to the written reports of correc-

The court also ruled that the three plaintiffs (including Akbar) were denied due process of law in their individual hearings because certain defendants (those also named as defendants in prior inmates' unrelated lawsuits) failed to disqualify themselves from participating in the present Adjustment Committee hearings. A jury heard the remaining issues including the extent of actual injuries, if any, to the plaintiffs. The jury awarded Akbar $3,500 in damages for deprivation of due process resulting from the inadequate Adjustment Committee Summary and for the lack of an impartial decisionmaker as defendant Hosier failed to disqualify himself from Akbar's hearing. The jury awarded Nalls $1,000 in compensatory damages for the denial of due process resulting from the inadequate Adjustment Committee Summary. Both parties appealed.

On appeal, this court affirmed the district court's holding that the Adjustment Committee's Summaries failed to satisfy minimum constitutional standards, finding the summaries to be too conclusory in that they failed to disclose the reasons for the committee's actions in imposing punishment for rule infractions in the prison. *Redding v. Fairman*, 717 F.2d 1105, 1116 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984).[7] This court reversed the district court awards of compensatory damages to Akbar and Nalls and two other plaintiffs on the grounds that the district court improperly denied the defendants an opportunity to present evidence beyond the administrative

record (consisting solely of the Adjustment Committee Summaries and Disciplinary Reports) on the issue of damages. This court also reversed the district court's ruling requiring a disqualification of every Committee member who is a defendant in a prior suit filed by an inmate appearing before the Adjustment Committee ruling that the disqualification issue is to be decided on a case-by-case basis. *Id.* at 1113. The court remanded the case to the district court to give the defendants an opportunity to present evidence beyond the administrative record on the issue of damages and further to allow the court to analyze the circumstances surrounding the unrelated lawsuits against individual committee members to determine whether disqualification of the Committee members was mandated. *Id.* at 1120.

On remand, the parties waived trial before a jury on the damages issue,[8] and the court took judicial notice of the report of the proceedings in the original jury trial. At the hearing on remand, Melvin Dillman, a member of the Pontiac staff, testified on behalf of the defendants that at approximately 10:00 a.m. on March 14, 1980, he observed Nalls enter the Pontiac gymnasium. Shortly thereafter Dillman approached the shower room of the gymnasium on a security check and saw Nalls exit the shower followed by inmate Richard Jones. Dillman observed that Jones was bleeding from his leg, and that Nalls was looking over his shoulder at Jones and heard Jones say, "I'm going to get you for

---

tional officers, automatically discounting any contradictory information, and failed to provide reasons for the nature and amount of the punishment imposed on the prisoners.

**7.** The Seventh Circuit concluded that:
"[N]one of [the Adjustment Committee Summaries], standing alone, fulfills the essential functions stated in [*Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1979)]. Moreover, the summaries violate A.R. 804 which states that '[i]t will not be sufficient for the Committee's decision to simply adopt and copy the exact wording of the Resident Disciplinary Report,' and violate the Due Process Clause, which requires the Committee to state not merely how it acts, but also

why it acts in a particular manner.... The phrases 'based on all available evidence,' or 'all evidence presented' are conclusory; they do not disclose what evidence forms the bases of the Committee rulings. The Committee apparently gives credence to the resident disciplinary report in almost every case, but does not admit to doing so in its summaries. Also, no reasons are given for discounting the inmates' contradictory evidence."
*Redding v. Fairman*, 717 F.2d 1105, 1115 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984).

**8.** The plaintiffs did not raise the issue of a fair and impartial decisionmaker on remand.

this." Nalls left the gym and Dillman took Jones to the hospital for medical attention. Thereafter, Dillman identified a picture of Nalls and prepared a "005 incident report" (a standard reporting form used by Pontiac officials to record rule infractions) detailing his observations and recollections of the incident. On cross-examination, Dillman related that he "did not include" the statement "I'm going to get you for this" in his report, but instead had recorded Jones' statement as "he would not forget what happened." Dillman maintained, however, that Jones made both statements.

The defendants also called Michael Dunning, a Pontiac staff member at the time of Akbar's alleged violation of prison rules in January 1980. Dunning testified that on January 10, 1980, Akbar was strip searched before he entered the North Segregation Unit to provide services as a law clerk to the inmates of the unit. Dunning related that when Akbar left the North Segregation Unit, Dunning again searched Akbar and the materials in his possession, and in the stack of papers Akbar was carrying, Dunning discovered "a couple of pieces of paper" that appeared to be gang related,[9] as well as two "kites" (unauthorized letters).

After hearing the testimony offered, the court found that the defendants were justified in taking disciplinary action against Nalls, concluding that a sufficient factual foundation existed beyond the administrative record for both the initiation of disciplinary action and the imposition of punishment against Nalls. The court did acknowledge that the Adjustment Committee violated Nalls' right to due process in failing to adequately summarize the evidence relied upon and the reasons for the action taken. The district court found that the defendants were justified in taking disciplinary action against Akbar, concluding that the evidence established that Akbar was found to be in possession of a kite. In view of the fact that Akbar spent only eight days in segregation, that he was reinstated as an inmate law clerk, and that the disciplinary report was expunged from his record, the court concluded that Akbar had suffered no injury as a result of any due process violation resulting from the Adjustment Committee's inadequate summary of the evidence and the reasons for its actions and thus was not entitled to an award of compensatory damages. Finding that neither plaintiff was damages as a result of the Adjustment Committee's due process violations, the court entered judgment in favor of Nalls and Akbar, and awarded each of them nominal damages of $1.00. The court also granted the plaintiffs' petition for attorney's fees and costs pursuant to 42 U.S.C. § 1988, including in the award $1,919.95 in expenses incurred in plaintiffs' unsuccessful petition for a writ of certiorari in the United States Supreme Court in *Redding v. Fairman.*

The plaintiffs subsequent motion to reconsider was denied and Akbar and Nalls appealed the district court's judgment, arguing that the defendants had not met their burden of proving that the Adjustment Committee's actions were justified. The defendants cross-appealed on the grounds that the district court improperly awarded the plaintiffs' counsel $1,919.95 in expenses for the unsuccessful petition for a writ of certiorari.

## II

In *Carey v. Piphus*, 435 U.S. 247, 262, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 252 (1978), the United States Supreme Court addressed the issue of whether a plaintiff in a 1983 action must prove actual injury resulting from a deprivation of procedural due process to recover substantial compensatory damages. The plaintiffs in *Carey*, elementary and secondary school students, claimed that they had been suspended from school without procedural due process protection. The court recognized that "proce-

9. The record does not disclose the precise nature of these pieces of paper or how they appeared to be gang related. A memorandum from Warden Fairman expunging Akbar's disciplinary report noted that the supposedly gang related material was subsequently identified as religious in nature.

dural due process rules are meant to protect persons not from a deprivation, but from the mistaken or unjustified deprivation of life, liberty or property." *Id.* 435 U.S. at 259, 98 S.Ct. at 1050. In its analysis, the court endorsed the reasoning of the Seventh Circuit:

> "The Court of Appeals held that if petitioners can prove on remand that '[respondents] would have been suspended even if a proper hearing had been held,' then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions. The court thought that in such a case, the failure to accord procedural due process could not properly be viewed as the cause of the suspensions. The court suggested that in such circumstances, an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation to respondents. We do not understand the parties to disagree with this conclusion. Nor do we."

*Id.* at 260, 98 S.Ct. at 1050. The court further explained that:

> "Where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But … the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983."

*Id.* at 263, 98 S.Ct. at 1052. In *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251 (1985), this court stated the principle set forth in *Carey:* "Where there has been a justified deprivation of a protected interest though deficient procedures, the injury caused by the justified loss is not properly compensable under section 1983." *Id.* at 1265. Thus, if the defendants were justified in taking disciplinary action against Akbar and Nalls, the district court properly refused to award compensatory damages notwithstanding the fact that the defendants employed deficient procedures (inadequately summarizing the evidence and reasons supporting its action) in adjudicating Akbar and Nalls' guilt.

Akbar and Nalls contend that the defendants failed to prove by a preponderance of the evidence that the actions of the Adjustment Committee were justified and thus assert that the original jury verdicts of $3,500 and $1,000 respectively should be reinstated by this court. Our review of the record with respect to Nalls discloses that a Pontiac staff member (Dillman) saw a bloodied inmate follow Nalls out of the shower and heard him say to Nalls, "I won't forget what happened" and "I'm going to get you for this." Despite Nalls' self-serving denial of stabbing the other inmate, Dillman's testimony provides more than ample evidence to establish that Nalls did in fact assault and stab another inmate, thus justifying the Adjustment Committee's conducting of a hearing, the finding of guilt and the resulting imposition of punishment. With respect to Akbar, the record reveals that a prison official (Dunning) discovered a couple of pieces of paper that appeared to be gang related material (the record fails to disclose in what manner the papers appeared gang related) and two kites in Akbar's possession as he left the North Segregation Unit on January 10, 1980. Dunning's testimony provided sufficient evidence that the Adjustment Committee was justified in conducting a hearing, finding Akbar guilty, placing him in segregation, and imposing a disciplinary job transfer in spite of the fact that further investigation of the materials found in Akbar's possession led Warden Fairman to expunge the disciplinary report from his record and reinstate Akbar as a prison law clerk. At the time of Akbar's hearing, the Adjustment Committee had sufficient evidence before it to support its finding Akbar guilty of possessing gang related materials. The defendants established that the Adjustment Committee was justified in finding both appellants Nalls and Akbar guilty of violating prison rules and regulations and we affirm the district court's action in awarding each of them nominal damages.

### III

The defendants claim on their cross-appeal that the district court improperly

awarded $1,919.95 as costs to the plaintiffs for their unsuccessful petition for a writ of certiorari in *Redding v. Fairman* on the grounds that neither Fed.R.Civ.P. 54(d) nor Fed.R.App.P. 39 authorize shifting the printing costs of a petition for certiorari. Further, the defendants assert that Supreme Court Rule 50.3 explicitly states that printing costs are not recoverable.[10]

The plaintiffs counter that the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 permits the district court to award reasonable fees *and* expenses to prevailing civil rights plaintiffs and also assert that the district court properly awarded the plaintiffs the costs incurred in printing the unsuccessful petition for a writ of certiorari in the United States Supreme Court as a reasonable out-of-pocket expense.

Section 1988 provides that "the court, in its discretion, may allow the prevailing party [in a civil rights action], . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. An award of attorney's fees pursuant to § 1988 is not limited strictly to the hourly fees of the lawyer: "[section 1988] seeks to shift the costs of the winning party's lawyer (in cases within the intended scope of the Act) to the losing party; and that cost includes the out-of-pocket expenses for which lawyers normally bill their clients separately, as well as fees for lawyer effort. The Act would therefore fall short of its goal if it excluded those expenses." *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984). However, a prevailing party is not automatically entitled to an award for attorney's fees and expenses incurred in connection with a particular lawsuit; rather, in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held:

"the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim

that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."

*Id.* at 440, 103 S.Ct. at 1943.

The district court correctly acknowledged that the plaintiffs were not successful parties on their petition for certiorari in the United States Supreme Court. Since the petition was clearly distinct from the proceedings in the district court and the court of appeals where the plaintiffs were properly characterized as the prevailing party and since the plaintiffs failed to prevail on their petition for certiorari, the costs the plaintiffs incurred in unsuccessfully petitioning for a writ of certiorari should be excluded from the award of fees pursuant to 42 U.S.C. § 1988. As the award of expenses related to the unsuccessful petition for certiorari is not authorized under 42 U.S.C. § 1988 or under Fed. R.Civ.P. 54(d), Fed.R.App.P. 39, or Sup. Ct.R. 50.3, we hold the district court erred in awarding the plaintiffs $1,919.95 as costs for their unsuccessful petition, and we reverse the district court's award of fees in that amount.

### IV.

The decision of the district court is AFFIRMED IN PART AND REVERSED IN PART.

CUDAHY, Circuit Judge: concurring in part and dissenting in part:

I would simply affirm the judgment of the district court. I believe that the award of expenses related to the petition for cer-

---

**10.** Rule 50.3 provides in pertinent part, "the expenses of printing briefs, motions, petitions,

or jurisdictional statements are not taxable."

tiorari is within the discretion of the district court. 42 U.S.C. § 1988.