**EASTER HOUSE, an Illinois not-for-profit corporation, Plaintiff,**

v.

**The STATE OF ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES; Mary Lee Leahy; Thomas Felder; Joan W. Sataloe; Millicent Smith; Pacita Haire; Truman Gibson; Easter House Adoption Agency Inc.; Michael J. Howlett, Secretary of State, State of Illinois, Defendants.**

Nos. 76 C 1170, 77 C 3121.

United States District Court, N.D. Illinois, E.D.

June 8, 1987.

James R. Figliulo, Carl A. Gigante, Foran, Wiss & Schultz, Chicago, Ill., for plaintiff.

Vito Evola, Pascucci & Evola, Thomas Ioppollo, Atty. Gen.'s Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Easter House brought this action in 1976, alleging violations of its constitutional rights and seeking $150,000 in compensatory damages and an unspecified amount of punitive damages. A jury awarded Easter House compensatory damages of $150,000 and punitive damages of $50,000, and the court entered judgment on the verdict on June 18, 1986.

As a prevailing plaintiff in an action under 42 U.S.C. § 1983, Easter House is entitled to recover "a reasonable attorney's fee" under 42 U.S.C. § 1988, in addition to the costs allowed as a matter of course under Fed.R.Civ.P. 54(d). The case comes before the court on Easter House's petition for attorneys' fees and expenses in the amount of $257,000. Defendants offer a series of challenges to the amount requested.

### I. ATTORNEYS' FEES

In calculating an attorneys' fee award under § 1988 the court begins by determining the lodestar amount, which represents "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Defendants object both to the hourly rates claimed by plaintffs' attorneys and to the number of hours for which they seek payment. They also object to plaintiff's assertion that § 1988 permits recovery of the fee for plaintiff's expert witness.

### A. *Hourly Rates*

Easter House originally retained Donald Page Moore as its counsel for this litigation and paid him $25,000 for his services in 1981 and 1982, at a rate of $90 an hour. Moore died in 1984, and Easter House hired Foran, Wiss & Schultz ("FWS") as its new counsel. FWS says it billed Easter House "at rates less than our current hourly rates" (Figliulo aff.), and that a truly "reasonable" fee for its services would be based on higher hourly rates than those it actually billed. The firm's actual and proposed hourly rates are as follows:

| Attorney | Actually Billed* | Proposed |
|---|---|---|
| Thomas Foran | $150 | $185 |
| Robert Wiss | 150 | 150 |
| James Figliulo | 125 | 150 |
| Jeffrey Blumenthal | 95 | 115 |
| Other Associates | 75–95 | 95 |
| Paralegals | 30–35 | 35 |

* Plus $25/hour for time spent on trial.

FWS billed Easter House for its services at regular intervals throughout the litigation, but says (without further explanation) that "less than half of the fees billed to Easter House have been paid" as of July 14, 1986. (Figliulo aff.)

### 1. *Significance of Hourly Rates Actually Billed.*

Defendants object to paying the hourly rates that FWS proposes, and urge the court to award only the amount the firm actually billed. FWS responds that its actual rates are of no consequence and it should receive the higher proposed rates because they are reasonable in comparison with the hourly rates of comparably skilled attorneys in Chicago.

■ In computing a fee award under § 1988, it is the court's duty to set an hourly rate which "simulate[s] the results that would obtain if the lawyer were dealing with a paying client." *Henry v. Webermeier*, 738 F.2d 188, 195 (7th Cir.1984). While it is true the court has an obligation to make an independent determination of a reasonable fee—which precludes it from blindly adopting either the hourly rate negotiated by the plaintiff and its attorney, or the attorney's customary hourly rate, *Strama v. Peterson*, 561 F.Supp. 997, 998 (N.D. Ill.1983); *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir.1982) (en banc)—it is likewise true that "[f]or private counsel with fee-paying clients, the best evidence [of a reasonable rate] is the hourly rate customarily charged by counsel or her law firm," *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir.1986). And as Judge Posner asked for the court in *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir.1986), "[w]hat could be a better gauge of the market than an actual transaction in it?"

The arrangement between Easter House and FWS was an actual transaction in the market for legal services, of FWS. Easter House and FWS were not naive when they negotiated their fee agreement; Easter House is a sophisticated corporate client and FWS is a law firm predominantly engaged in corporate litigation. Nothing in FWS's fee petition or elsewhere in the record suggests either that FWS charged Easter House less than its other clients because of the possibility of a fee award under § 1988, *see Lenard v. Argento*, 808 F.2d 1242, 1247 (7th Cir.1987), or that its customary hourly rates do not reflect the true value of its services because the client is a charitable enterprise, *see Strama v. Peterson*, 561 F.Supp. at 999. Moreover, a 1984 survey of law firms by the accounting firm of Arthur Young demonstrates that the hourly rates at which FWS billed Easter House were well within the normal range of rates in Chicago.

■ Because the hourly rates FWS charged Easter House during the course of this litigation were comparable to those charged by similarly skilled lawyers for similar work in the Chicago area, and because Easter House has not carried its burden of demonstrating that a higher rate is appropriate, *see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* —— U.S. ——, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986), the court concludes that FWS's actual billing rates establish reasonable hourly rates for purposes of calculating the lodestar amount.

### 2. *Actual Versus Historic Billing Rates.*

In addition to arguing that its fee arrangement with Easter House did not fully reflect the "reasonable" value of its services, FWS contends that the law in this circuit *requires* courts to calculate fee awards based on attorneys' current hourly rates, rather than on the "historic" rates charged during the course of litigation. Indeed, FWS says, defendants' argument to the contrary "was expressly rejected by the Seventh Circuit in *Ramos v. Lamm*, 713 F.2d 546, 555 (7th Cir.1983) ('[t]he hourly rate on which compensation is awarded should reflect rates in effect at the time the fee is being established by the Court, rather than those in effect at the time the services were performed')."

■ FWS is wrong. To begin with, *Ramos* is a Tenth Circuit case, not, as both parties repeatedly say, a Seventh Circuit

case. There appears to be no Seventh Circuit authority requiring compensation of attorneys at current rather than historic rates. More fundamentally, courts have used current rates as a basis for calculating fee awards only when prevailing plaintiffs' attorneys received no compensation during the course of lengthy litigation, reasoning that use of current billing rates might roughly compensate counsel for the delay in payment. *See, e.g., Ramos,* 713 F.2d at 555; *Daly v. Hill,* 790 F.2d 1071, 1081 (4th Cir.1986); *Murray v. Weinberger,* 741 F.2d 1423, 1433 (D.C.Cir.1984). In this case, however, FWS received timely payment of a substantial but thus far unspecified portion of its fees. With respect to that portion, FWS has no basis whatsoever for asserting a right to compensation at current hourly rates.

The cases FWS cites arguably support recalculating the firm's unpaid bills at its current hourly rates. Because FWS has not identified the bills that remain unpaid, however, it is impossible for the court to determine whether the use of current rather than historic hourly rates is appropriate, and if so, how that would affect the fee award. Consequently, the court relies exclusively on historic rates in calculating the fees due FWS.

### 3. *Propriety of Higher Rates for In-Court Time.*

■ Defendants urge the court to refuse to allow FWS the $25 per hour premium it billed Easter House for time spent in court. While the practice of charging higher rates for court time may no longer be as common as it once was, *see Strama v. Peterson,* 562 F.Supp. at 1000 n. 7 and n. 8, it survives in many firms, including FWS. Defendants do not suggest FWS treated Easter House different from other clients by charging higher rates for court time, nor do they cite a single case in which a court has refused to award higher fees for court time to a lawyer who regularly charged higher in-court rates. Accordingly, the court finds that FWS reasonably billed Easter House an additional $25 per hour for court time.

### 4. *Expertise of FWS.*

■ Defendants suggest that FWS should not be compensated for this litigation at its ordinary rates because the firm lacks expertise in civil rights litigation. The court disagrees. FWS is a highly-skilled litigation firm whose expertise was essential to plaintiff's success in this litigation. The value of the firm's expertise is not reduced by the fact that Easter House sued to enforce its civil rights.

### 5. *Paralegal Rates.*

■ Defendants argue that $35 an hour is too high a rate for paralegals, particularly when the paralegals spent a portion of their time performing tasks that could have been performed by clerical workers, such as organizing files and copying. A review of FWS's billing statements indicates that the paralegals spent relatively little time on strictly clerical functions such as copying and running errands, and devoted most of their time to projects requiring an understanding of the case, such as organizing and compiling exhibits. Because this use of time appears reasonable, because FWS regularly passes the cost of paralegal services directly to the client rather than absorbing it into the firm's overhead, and because FWS charged all clients the same rate for paralegal services, the court sees no reason to question plaintiff's fee petition in this respect.

In 1985, FWS increased its charge for paralegal services from $30 to $35 an hour. (Figliulo aff., ¶ 6). Consistent with the discussion on pages 5 and 6 of this opinion, plaintiff may not recover the $5 differential in rates with respect to the pre–1985 paralegal time that FWS billed (and Easter House paid) at a rate of $30 an hour.

### B. *Hours Expended*

#### 1. *Hours Required for Transition From Donald Page Moore to FWS.*

■ Defendants object to paying for what they refer to as the "duplication" of effort that occurred when FWS lawyers reviewed the history of this case after Donald Page Moore's death. This objection is groundless; Easter House was not respon-

sible for Moore's death, and the time FWS spent becoming familiar with the file was unavoidable.

### 2. *Time Spent Before and During Trial.*

■ Defendants object to the 70 hours that Thomas Foran spent in conference with other lawyers on the case, and to the occasional 15– and 16–hour days that plaintiff's attorneys billed during trial. Neither is excessive. Foran is a superb, seasoned trial lawyer, and his advice undoubtedly was valuable to the lawyers who tried the case. Seventy hours is a reasonable amount of time for him to have spent in conference with other lawyers on this case over the course of several years. It likewise was reasonable for Easter House's attorneys to occasionally bill 15– and 16–hour days during trial; indeed, such long hours were almost inevitable in light of this court's lengthy trial days and the high level of preparation that this court demands of counsel.

### 3. *Hours Spent by Donald Page Moore.*

■ Defendants object to the lack of documentary evidence that Donald Page Moore performed $25,000 worth of services at $90 an hour. While the records of his work in this case may be somewhat incomplete, Donald Page Moore was well-known in this legal community as a professional with high ethical standards. His statements to Easter House indicated that he performed $25,000 worth of services, and Easter House confirmed this by paying Moore's bills. This court therefore has no doubt that the payments to Moore reflected a reasonable value for his services.

### C. *Expert Witness Fees*

■ Defendants also object to Easter House's request for $3,041 as the fee for its expert witness, accountant Howard Benditzen. Defendants argue that expert witness fees are not recoverable under § 1988, but this circuit has held otherwise, *Heiar v. Crawford County, Wisconsin,* 746 F.2d 1190, 1203 (7th Cir.1984), and the court accordingly allows plaintiff's expert witness fee.

### II. EXPENSES

■ Defendants' only objection to Easter House's bill of costs concerns its request for $864 for daily copy. Reimbursement for daily copy is discretionary, and whether the court should allow it depends on such factors as the length and complexity of the trial, and the need for transcripts to resolve disputes about testimony or to prepare proposed findings of fact. *See Independence Tube Corp. v. Copperweld Corp.,* 543 F.Supp. 706, 719–20 (N.D.Ill.1982).

Nothing in this case justifies the luxury of daily copy. The trial was not extraordinarily lengthy or complex, there were no significant disputes about the testimony of witnesses, and there was no need to prepare findings of fact. A good lawyer takes good notes at trial, and in this case those notes should have made daily copy unnecessary.

### CONCLUSION

The statements FWS submitted to Easter House during this litigation show that FWS charged the following amount for the services of its attorneys and paralegals:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Thomas Foran | 69.75 | $150 | $10,462.50 |
| Robert Wiss | 1.00 | 150 | 150.00 |
| James Figliulo | 541.75 | 125 | 67,718.75 |
|  | 74.25 | 150 | 11,137.50 |
| Jeffrey Blumenthal | 102.50 | 95 | 9,737.50 |
|  | 2.00 | 120 | 240.00 |
| Carl Gigante | 1,013.75 | 75 | 76,031.25 |
|  | 7.25 | 95 | 688.75 |
|  | 64.50 | 100 | 6,450.00 |
| Steve Gistenson | 33.25 | 75 | 2,493.75 |
| Doug Stevens | .75 | 75 | 56.25 |
|  | 8.50 | 95 | 807.50 |
|  |  |  | $185,973.75 |
| Paralegals | 14.50 | 30 | 435.00 |
|  | 135.50 | 35 | 4,742.50 |
|  |  |  | $191,151.25 |

Because the court finds both the number of hours and the hourly rates reasonable, and because plaintiff's request for reimbursement of expenses of $4,673.35 likewise is reasonable, the court orders defend-

ants to pay plaintiff a total of $195,824.60 in fees and expenses under § 1988.

Plaintiff's bill of costs totals $5,607.10. After subtracting $864 as the disallowed amount for daily copy, plaintiff is entitled to recover costs of $4,743.10 as the prevailing party in this litigation.

Accordingly, the court orders defendants to pay plaintiff fees and expenses of $195,-824.60 under § 1988, and costs of $4,743.10.