Charles W. LEIGH and Ervin F. Dusek, for themselves and on behalf of all other participants, etc., Plaintiffs,

George Johnson, Robert Daumke, Heriberto Pizarro, Eleanor Madsen, Kenneth Strohm, and Ernest Roll, Intervening Plaintiffs,

v.

Clyde William ENGLE, Ronald Zuckerman and Nathan Dardick, Libco Corporation, Telco Marketing Services, Inc., and Telvest, Inc., Reliable Employees Profit Sharing Plan Trust, Defendants.

No. 78C3799.

United States District Court, N.D. Illinois, E.D.

June 15, 1989.

Ware Adams, Chicago, Ill., for plaintiffs.

Richard C. Moenning, Edward McNeela, Dent, McNeela & Griffin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The most recent of the appeals is over, and the judgment on the merits of this

litigation is indisputably final. Now the "secondary litigation" begins: that over attorneys' fees. While the court wishes that this were the last opinion in this matter, history cautions the court against being too optimistic.[1]

Nearly two years ago the court held that various parties were entitled to fees and costs as a matter of law. See *Leigh v. Engle,* 669 F.Supp. 1390, 1414–17 (N.D.Ill. 1987), aff'd, 858 F.2d 361 (7th Cir.1988), cert. denied sub nom. *Estate of Johnson v. Engle,* —— U.S. ——, 109 S.Ct. 1528, 103 L.Ed.2d 833 (1989). Pursuant to this court's ruling, which recounts the facts of this case sufficiently, three petitions have been filed: one on behalf of National Boulevard Bank, the trustee of the Reliable Trust since February 5, 1979; a second on behalf of Nathan Dardick and Ronald Zuckerman, administrators of the Trust;[2] and a third from the intervening plaintiffs in this suit. Additionally, pursuant to this court's earlier conclusion that Libco Corporation, Clyde Engle, Telco Corporation, and Telvest Inc. must reimburse the Trust before payment of any attorneys' fees, see *Leigh,* 669 F.Supp. at 1415, the intervening plaintiffs have moved for a Rule to Show Cause to Dardick, National Boulevard, and counsel for the defendants as to why they have not so reimbursed the Trust.

### Reimbursement of the Reliable Trust

The court will address the issue of reimbursement first. During the course of this litigation the Trust paid $160,877.97 to the firm of Sachnoff, Weaver, Rubenstein Ltd. for the benefit of Dardick, Zuckerman, Libco, Engle, Telco, and Telvest. Subsequent-

1. The parties should not regard this as a license for further action.

2. Dardick and Zuckerman filed their original petition on November 20, 1987 and supplemented it on November 2, 1988. The court reviewed these materials and rejected them as being unclear. Dardick and Zuckerman thus amended their petition on January 11, 1988; the intervening plaintiffs objected to it on January 13, 1988. Following further remonstrance from the court, Dardick and Zuckerman filed a second amended petition on February 23, 1989. This petition seeks fees which are drastically lower than

those which Dardick and Zuckerman originally sought.

Dardick and Zuckerman have not sought recovery of out-of-pocket expenses or fees for their attorneys in their successful defense of this court's judgment before the Seventh Circuit, for their response to the intervenors' fruitless request for certiorari from the Supreme Court, or for any other work done since the Seventh Circuit's second opinion in this case. Dardick and Zuckerman reserve the right to petition for fees for this work.

ly, Aetna Casualty and Surety Company of Illinois reimbursed the Trust for $71,-351.28. Aetna made the payments under a fiduciary responsibility insurance policy purchased by the Trust, which named the Trust's fiduciaries as insureds.

■ This leaves $89,526.89 in fees which the Trust paid to Sachnoff and for which no one has reimbursed the Trust. The problem with determining who should reimburse the Trust for this amount is that Sachnoff's services benefited six of the defendants. Two of these defendants prevailed on some of the issues which were tried in this case, which means that their amount of reimbursement ultimately should be lower than the other defendants'. Apparently Sachnoff's records do not permit clear calculation of how many hours it spent doing what, which complicates how to determine each defendant's reimbursement liability.

There are two proposals for reimbursement, one from Libco and Engle, and the other from Dardick and Zuckerman.[3] Libco and Engle submit that Engle, Dardick, Zuckerman, and Aetna agreed to attribute one-third of the Sachnoff costs to Engle and the other two-thirds to Dardick and Zuckerman. Libco and Engle suggest that the court adopt this same division, then offset any fee amounts which the Trust owes to Dardick and Zuckerman against the amount of Dardick and Zuckerman's reimbursement to the Trust.

Dardick and Zuckerman for their part propose that the court attribute 50% of the Sachnoff fees to the defense of Libco and Engle, and 50% to them. They likewise adopt the Libco/Engle suggestion that the court offset any fees owed to them against their amount of reimbursement, and propose that these fees be split according to the number of principal issues in the case, three. By this formula, Dardick and Zuckerman would end up reimbursing the Trust one-sixth of the Sachnoff fees, since 50% would be Libco and Engle's responsibility and since Dardick and Zuckerman prevailed on two of the three principal issues.

The court will adopt Dardick and Zuckerman's reimbursement proposal, but only in part. Choosing between the two proposals is not easy, as none of the parties justified its proposed split between Libco/Engle and Dardick/Zuckerman. The parties' agreement with Aetna, for example, in no way binds this court, although it may result in litigation—hopefully elsewhere—as to who is contractually responsible for the Sachnoff fees. The split proposed by Dardick and Zuckerman, however, seems to mirror the reality of this litigation more accurately. As noted earlier, Sachnoff defended six persons and entities in this suit. Nevertheless, two of these entities, Telco and Telvest, were so closely aligned with Libco and Engle that this court will aggregate them with Libco and Engle for purposes of reimbursement.[4] Thus, 50% of the remaining Sachnoff fees should be borne by Libco and Engle, and the other 50% should be borne by Dardick and Zuckerman.

■ This leaves the court with Dardick and Zuckerman's request for offset. As noted earlier, Dardick and Zuckerman seek to offset two-thirds of their reimbursement amount because they prevailed on two of the three principal claims in this case. Dardick and Zuckerman's suggestion that this court approximate the amount of the Sachnoff fees which the Trust properly should have paid on behalf of Dardick and Zuckerman according to a rough split of claims runs contrary to *Hensley v. Eckerhart*, 461 U.S. 424, 435–36 n. 11, 103 S.Ct. 1933, 1940 n. 11, 76 L.Ed.2d 40 (1983), where the Court rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." It also runs against this court's express holding in its earlier opinion:

In holding that Dardick and Zuckerman are entitled to reimbursement for prevail-

---

**3.** The intervening plaintiffs object to both proposals, without offering the court an alternative of their own.

**4.** Curiously, both the Libco/Engle and the Dardick/Zuckerman proposals did not allocate a portion of the reimbursement to Telco and Telvest. Apparently the court is not alone in ignoring these entities.

ing on [two of the three claims], the court is aware of the difficulty of attributing each dollar of legal costs to one claim or another. Because ERISA prohibits trusts from reimbursing the legal expenses of breaching fiduciaries, and Dardick and Zuckerman did breach their fiduciary duties in one respect, *they must bear the burden of demonstrating that any legal expenses for which they seek reimbursement are attributable solely to plaintiffs' unsuccessful claims.*

*Leigh,* 669 F.Supp. at 1415 (emphasis added). Much as the court would like to see things at an end, the court cannot conclude that Dardick and Zuckerman have carried their burden on this matter. Unless and until Dardick and Zuckerman justify their proposed allocation of fees, the court will not permit them to offset their share of the Sachnoff fees against their amount of reimbursement.[5]

Since filing their first petition, Dardick and Zuckerman have advanced a separate ground for offset: the Trust owes them for fees incurred in this litigation following the Seventh Circuit's remand of this case in 1984. While they acknowledge that the court wished to settle the issue of reimbursement before moving on to attorneys' fees, see *id.,* Dardick and Zuckerman contend that they have a right to retain Trust assets until the Trust pays amounts owed to them.

For this proposition Dardick and Zuckerman direct the court to Austin W. Scott, 3 The Law of Trusts § 244.1 (1967). Dardick and Zuckerman's reliance on Scott's treatise is unavailing. Scott writes that "[a] *trustee* who is entitled to reimbursement ... for expenses properly incurred in the administration of the trust

cannot be compelled to surrender the trust property to the beneficiaries until his claim for reimbursement ... has been satisfied." (emphasis added) As this court noted in its earlier opinion, the trustees in this case were Harris Bank and National Boulevard Bank; Dardick and Zuckerman were only administrators of the Trust's assets. See *Leigh,* 669 F.Supp. at 1407, 1393. Under Illinois law,[6] a trustee has responsibilities which are greater in many instances than those which even the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. (1982), imposes. See generally Ill.Rev.Stat. ch. 17 ¶¶ 1651 et seq. (Smith–Hurd Ann. 1981 and 1988 supp.). In return for imposing these equitable (now statutory) responsibilities upon trustees, the law historically has given trustees a security interest in the property of the trust. See *Patterson v. Northern Trust Co.,* 286 Ill. 564, 567, 122 N.E. 55, 56 (1919); *Kerner v. Peterson,* 368 Ill. 59, 12 N.E.2d 884, 894 (1938); Scott, 3 The Law of Trusts at § 244.1. Dardick and Zuckerman have not presented any law granting administrators a like interest, probably because administrators do not have the same responsibilities as trustees. Thus, Dardick and Zuckerman may not retain Trust assets pending receipt of attorneys' fees.

### National Boulevard's Petition for Fees

With the issue of reimbursement resolved, the court turns to the parties' fee petitions. The first petition is that of National Boulevard Bank, as Trustee for the Reliable Trust, for $5,755.00. As noted in this court's earlier opinion, National Boulevard Bank "is entitled to complete reimbursement of its legal expenses from the trust...." *Leigh,* 669 F.Supp. at 1415. Notwithstanding this court's mandate, the

---

5. While the court concludes that Dardick and Zuckerman have not carried their burden in demonstrating that Sachnoff incurred their proposed amount of fees properly, the court does not believe that Dardick and Zuckerman are in contempt of this court's order, as they had good cause for claiming that they were not liable for reimbursement of a full 50% of the Sachnoff fees. Since Dardick and Zuckerman have indicated that Sachnoff incurred some of its fees properly, the court will give Dardick and Zuck-

erman 30 days to supplement their petition for fees before they must reimburse the Trust for their half of the Sachnoff balance.

6. On other issues the parties have suggested that Illinois law governs the Trust. The court will treat this as a stipulation. See *City of Clinton, Ill. v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987) (parties may stipulate to applicable law by their conduct, within broad limits).

intervening plaintiffs object to reimbursement of National Boulevard Bank's expenses on five grounds. The intervenors contend initially that ERISA and Illinois law require the Bank to demonstrate a benefit to the Trust prior to reimbursement. The intervenors first point to 29 U.S.C. § 1110 as the source of this obligation. That statute voids any agreement "which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [ERISA]." The intervening plaintiffs fail to demonstrate how the Trust's agreement with National Boulevard Bank violates this provision, and thus the court will disregard this argument.

■ Next the intervening plaintiffs point to Ill.Rev.Stat. ch. 17, ¶¶ 1662–63. These provisions give a trustee the power to pay "reasonable expenses incurred in administering the trust estate," appoint "attorneys, auditors, fiancial advisers and other agents," and to pay these persons reasonable compensation. These statutes impose the obligation claimed by the intervening plaintiffs, and thus the court is required to review the Bank's bill for reasonableness. The court has done so, and finds the amounts requested to be reasonable. The Bank's petition thus does not violate ¶¶ 1662–63.

■ Notwithstanding the factual reasonableness of the fees which the Bank incurred, the intervening plaintiffs object to it on grounds that the fees cannot be reasonable as a matter of law, since the Bank incurred them after termination of the Trust. The intervening plaintiffs cite no authority for this proposition. To the contrary, Illinois law expressly provides that a trustee may exercise all of his powers between the time of the termination of the trust and the distribution of its assets. See *id.* at ¶ 1672. Since the Bank has not distributed the entire corpus of the Reliable Trust, it is entitled to continue exercising its powers, which includes paying itself for reasonable expenses.

The intervening plaintiffs next claim that they are entitled to an accounting of moneys paid by Aetna to Sachnoff and Jenner & Block, the present counsel for Dardick and Zuckerman. Like their claim that ERISA imposes a standard of reasonableness in reimbursement of legitimate fiduciary expenses, the intervenors' present claim lacks legal authority. Moreover, the Trust has already received an accounting of the moneys Aetna paid to Sachnoff as reimbursement for the Trust's unwarranted payments; to this extent the intervenors' claims are moot.

Last the intervenors claim that Libco indemnified the Bank for its expenses, and thus the Trust should not have to pay the Bank. While the court understands the intervenors' motive in making this argument, it is yet another objection that the intervenors fail to support with facts—namely, that Libco or Reliable Manufacturing Corporation, which had an obligation under § 6.4 of the Restated Reliable Manufacturing Corporation Employees' Profit sharing Plan (hereinafter "Restated Plan") to pay the Trustee, actually did so. The court has held that the Trust is obliged to pay the Bank according to the Trust Agreement. Unless and until it is shown that Libco or Reliable paid these fees, the court orders the Trust to pay $5,755.00 to National Boulevard Bank.

*Dardick and Zuckerman's Petition for Fees*

Dardick and Zuckerman petition this court for an award of a portion of the Sachnoff fees incurred prior to the first Seventh Circuit decision, and $116,984.74 in fees and expenses for litigation after that decision. As noted earlier, Dardick and Zuckerman's claim for a portion of the Sachnoff fees is deficient at present, and so the court will not rule on the merits of that portion of their request at this time. As for the remaining fees, these are adequately documented; nevertheless, the intervening plaintiffs raise numerous objections.

■ The court disposed of two of the intervenors' objections, those relating to the claimed violation of 29 U.S.C. § 1110 and the absence of an accounting, in awarding National Boulevard Bank its expenses. Other objections are related to

those which the intervenors levied against the Bank, but they require additional analysis because of Dardick and Zuckerman's status as administrators. Like the Bank, Dardick and Zuckerman can receive only reasonable expenses under Illinois law. See Ill.Rev.Stat. ch. 17 at ¶ 1663. The court has reviewed the items contained in Dardick and Zuckerman's Second Amended Petition, and finds their request for $57,-753.75 in attorneys' fees and $59,230.99 in witness expenses to be reasonable. The intervening plaintiffs again argue that as a matter of law these expenses cannot be reasonable, as Dardick and Zuckerman incurred them after termination of the Reliable Trust. While Dardick and Zuckerman cannot assert that Illinois law expressly allows their claims—¶ 1672 applies only to trustees—it would be illogical for the court to disallow such expenses, absent a clear statutory prohibition. Had Dardick and Zuckerman charged the trustee for their expenses, and the trustee paid them after termination of the trust, the trustee would be entitled to reimbursement as a matter of law. The intervening plaintiffs offer no reasons why Dardick and Zuckerman should not recover directly from the Trust what they could have recovered indirectly from the Trust.

■ The intervening plaintiffs raise numerous objections which are directed at Dardick and Zuckerman alone. They first contend that Dardick and Zuckerman did not comply with § 1.6 of the Restated Plan. That section is printed in *Leigh*, 669 F.Supp. at 1413–14, and will not be reprinted here. The intervenors argue that Dardick and Zuckerman cannot recover under § 1.6 from the Trust unless and until they have demonstrated compliance with § 9.2 of the Trust Agreement for the Reliable Manufacturing Company Employees' Profit–Sharing Trust (hereinafter "Trust Agreement"), reprinted in *Leigh*, 669 F.Supp. at 1414.

The intervenors submit initially that the Trustee did not reserve "reasonable amounts as it may deem necessary to provide for the payment of any expenses then or thereafter chargeable to the Trust Fund," in accordance with § 9.2 of the Trust Agreement. The court expressly noted in *Leigh*, 669 F.Supp. at 1414, that the Trustee did in fact make such a reserve.[7] Nonetheless, the intervenors seem to suggest that Dardick and Zuckerman should seek to recover from this reserve before going after other Trust assets. Nothing in the operative provision of the Restated Plan, § 1.6, requires this, however.

■ The intervenors next claim that § 1.6 requires Dardick and Zuckerman to demonstrate that they sought payment from Reliable Manufacturing Company before turning to the Trust for expenses. The intervenors misconstrue § 1.6. It provides only that Dardick and Zuckerman's expenses "*may* be paid by [Reliable]," and that "[i]n the event that the expenses are not paid by [Reliable], then such expenses *shall* be reimbursed by the Trustee." (emphasis added). While § 1.6 requires Dardick, Zuckerman, or their agent to state that Reliable has not paid them,[8] it does not require Dardick and Zuckerman to make a demand on Reliable. Dardick and Zuckerman's claimed expenses were incidental to their administration of the Restated Plan, and under § 1.6 of that plan's governing document they are entitled to reimbursement.

■ The intervenors next assert that § 6.4 of the Restated Plan requires Reliable Manufacturing to pay Dardick and Zuckerman's expenses. The intervenors misread § 6.4. That section relates only to

---

7. The intervenors' statement that "[n]o allegation was ever made and no evidence was introduced" on the issue of the Trustee's reserving amounts to cover post-distribution expenses, see Objections to Fee Petitions by Trustee[,] Dardick and Zuckerman 3, is a blatant misstatement, one which could warrant sanction under Rule 11, Fed.R.Civ.P.

8. This could be grounds for denial of Dardick and Zuckerman's petition for $116,984.74 in fees and expenses, as their petition does not state that Reliable did not pay them. The court has already found this fact, however, see *Leigh*, 669 F.Supp. at 1414, and thus the court will disregard this objection to Dardick and Zuckerman's petition.

expenses of the Trustee, and as this court indicated earlier, Dardick and Zuckerman are not the Trustee. Section 6.4 of the Restated Plan thus does not affect the Trust's obligations to Dardick and Zuckerman under § 1.6 of the Plan.

The intervenors' other objections lack foundation. The intervenors argue, for example, that § 1.6 of the Restated Plan does not provide for reimbursement of the costs of Dardick and Zuckerman's experts, as they are not incidental to their functions. The court disagrees. Section 1.6 lists as examples of incidental expenses such things as costs of counsel; there is nothing in the Plan that indicates other litigation expenses are excluded from § 1.6. Dardick and Zuckerman are thus entitled to reimbursement of their costs of witnesses.

By means of supplemental objections, the intervenors raise a series of challenges to Dardick and Zuckerman's claims for attorneys fees on the grounds of conflicts of interest. First the intervenors argue that it is unethical for Jenner & Block, as counsel for Dardick and Zuckerman, to seek fees from the Trust because Jenner & Block also was counsel for the Trust. There is no evidence that this was so. The intervenors seem to argue that because Aetna insured Dardick and Zuckerman along with the Trust, and because Jenner & Block represented Dardick and Zuckerman and received advances from Aetna, Jenner & Block somehow represented Dardick and Zuckerman's co-insured, the Trust. The flaw in this logic is patent.

The intervenors next accuse Dardick and Zuckerman of having a duty towards the Trust by having received advances from Aetna. If this is so, the Trust should sue them. While they are doing that, this court will award Dardick and Zuckerman their expenses resulting from *this* litigation, to which this court has declared repeatedly that Dardick and Zuckerman are entitled. The intervenors never demonstrate a breach, nor do they demonstrate how that breach, if any, destroys Dardick and Zuckerman's entitlement to fees, an entitlement which the Seventh Circuit affirmed. Nor do the intervenors demonstrate how other acts of Dardick and Zuckerman—their agreement with Aetna as to the conduct of litigation, or their role in Aetna's agreement with other plaintiffs in this case to settle their disputes—similarly defeat Dardick and Zuckerman's present, reasonable request. The court will not allow the intervenors to inject new, wholly collateral issues into the present issue of attorneys fees.

There being no other objections, the court awards Dardick and Zuckerman fees and expenses in the amount of $116,984.74, payable by the Reliable Trust. Payment of this sum is contingent on Dardick and Zuckerman's reimbursement of their portion of the Sachnoff expenses. Dardick and Zuckerman may petition for their share of the latter expenses only if they meet the conditions which the court discussed earlier.

### Intervening Plaintiffs' Petition for Fees

Last the court addresses the petition of the intervenors for fees, which are due and payable from Dardick, Zuckerman, Libco, and Engle. See *Leigh*, 669 F.Supp. at 1417. The intervenors have petitioned for $160,744.54 in expenses and attorneys fees. The liable parties do not object to the intervenors' statement of non-attorney expenses —amounting to $5,800.54—but they do object to the intervenors' request for attorneys' fees in the amount of $154,944.00.

The intervenors break down their proposed compensation of their attorney, Richard C. Moenning, into two components: a "lodestar" of $121,650.00 and a "risk multiplier" amount of $33,894.00, which the intervenors obtain by multiplying Mr. Moenning's expended hours by 1.28. The defendants object both to the lodestar and the risk enhancement. As to the lodestar, the defendants complain that Mr. Moenning's time records are not contemporaneous nor sufficiently detailed. Mr. Moenning states in his affidavit accompanying his fee request, "This time was prepared manually and contemporaneously as expended after completion of the task, and from a careful reivew of my files in this case.... Although my records do not permit me [to allocate my time to particular matters] with

accuracy down to the exact number of minutes I spent on each matter, I believe the [attached] allocation is reasonably precise. I am confident this total is accurate." The defendants disagree.

■ When requesting an award of fees, a party "should submit evidence supporting the hours worked and the rates claimed." While counsel "is not required to record in great detail how each minute of his [or her] time was expended," he or she "should identify the general subject matter of his [or her] time expenditures." Such documentation is crucial to permitting the court to achieve its goal of assessing the reasonableness of the hours claimed to have been spent on the matter. The party who fails to document his or her legal expenses may face a reduction in his or her award. *Hensley*, 461 U.S. at 433, 437 n. 12, 103 S.Ct. at 1939, 1941 n. 12.

■ Mr. Moenning does not contest the defendants' assertion that he lacks contemporaneous records of the hours which he spent on this matter after 1981. He admits —and one can read his original affidavit to suggest—that his record of hours spent since 1981 is based on a reconstruction of his time. While the court prefers contemporaneous records over reconstructions, the court does not find Mr. Moenning's reconstruction to be so inadequate as to be useless to the court in assessing the reasonableness of the hours Mr. Moenning swears he incurred. Nor is his statement so poor that the defendants cannot challenge the items which Mr. Moenning lists. He gives hours spent, the dates on which he worked, and the task. The defendants can check these activities against what they know occurred in this case. They also can—and did—check with the other plaintiffs to see if Mr. Moenning's hours were reasonable. The court will not strike Mr. Moenning's statement of hours solely on the grounds of lack of contemporaneous records where the hours appear reasonable, the claim for them is under oath, and the defendants have an adequate opportunity to challenge the items listed.

■ The court thus holds that Mr. Moenning's claim of 807 hours spent on this matter is reasonable.[9] The court now turns to the other number pertinent to the lodestar calculation: the hourly rate. Mr. Moenning wishes to multiply the hours spent in this litigation from February 1980 until March 1984 at his December 1987 rate of $150.00 per hour. This rate differs from his historical rates, which started at $60.00 per hour and rose to $125.00 per hour. The defendants argue that Mr. Moenning's time should be billed at his historical rates.

The Seventh Circuit's most recent discussion of the appropriate hourly rate to be used in calculating the lodestar amount comes in *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646 (7th Cir.1985). There Ohio–Sealy petitioned the district court for an award based on the current hourly rates of its attorneys. The trial court rejected this suggestion, and used instead a weighted average historical rate. After making other adjustments, the district court multiplied the lodestar by two to adjust for inflation.

Defendant Sealy appealed the court's award, in part because of the manner in which the court adjusted for inflation. The Seventh Circuit determined that the lower court did not abuse its discretion to adjust for inflation, as the case had lasted for 15 years. The appellate court took issue, however, with the court's manner of adjustment. While a district court can choose from a variety of adjustments—interest, percentage allowances for inflation, or a flat "multiplier"—the Court of Appeals warned against overcompensating a prevailing party for inflation. The court rec-

---

**9.** Reasonableness is a somewhat relative term, particularly in a case like this one. The court has noted previously the degree to which the parties, particularly the intervenors, have prolonged this litigation unnecessarily. See *Leigh*, 669 F.Supp. at 1417. The Seventh Circuit has concurred. See *Leigh*, 858 F.2d at 365 (complaining of intervenors' overzealous assertions); *id.* at 366 (complaining of intervenors' repeated unsubstantiated arguments); *id.* at 369 (complaining of intervenors' needless tactics prolonging the case, at expense of Trust beneficiaries); *id.* at 370 n. 5 (rejecting near-frivolous argument for sanctions); *id.* at 371 (adjuring intervenors' counsel to think twice before extensively litigating).

ognized that while a court can employ current hourly rates to compensate for inflation, such a choice usually is appropriate only where the litigation lasts only a few years. By contrast, "[w]hen a case lingers on for a long time, ... using current hourly rates may produce a windfall for the [prevailing party] since changes in hourly rates reflect not only inflation but also an attorney's increased experience and skill." *Id.* at 662–63.

It is apparent from Mr. Moenning's petition that he asks the court to use his current rates not to adjust the lodestar for inflation, but to provide the intervening plaintiffs with a premium for their success in this litigation. Mr. Moenning's petition fails to present the court with any analysis of inflation during the pendency of this litigation, which is his burden. The court will thus reject Mr. Moenning's present request for using current rates in the lodestar for the moment, and consider it below when discussing whether it would be appropriate to enhance the intervenors' award above the lodestar amount. The court will employ Mr. Moenning's historical rates in calculating the intervening plaintiffs' lodestar amount, which comes to $76,008.75.

 The court is left with the question of whether it should enhance the intervenors' award, either by employing Mr. Moenning's current hourly rate or multiplying the award to account for Mr. Moenning's risk in this litigation. The court begins with the seminal discussion of upward adjustments of attorneys fees in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). There the Court stated that the lodestar amount is presumed to be the reasonable fee under 42 U.S.C. § 1988 (1982), the fee-shifting statute for civil rights actions.[10] If the fee applicant wishes the court to enhance the award, the applicant bears the burden of proving that enhancement is warranted.

The Court stated that such cases are rare, and are marked by " 'exceptional success.' " *Blum,* 465 U.S. at 897–98, 104 S.Ct. at 1548–49, quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940.

The Supreme Court has not elaborated upon the meaning of "exceptional success." The Seventh Circuit provided one definition, albeit indirectly, in *In re Burlington Northern, Emp. Practices Lit.,* 810 F.2d 601 (7th Cir.1986). There the court reviewed a decision by Judge Leighton denying a class of private plaintiffs an enhancement of attorneys fees on grounds of exceptional success. See *E.E.O.C. v. Burlington Northern, Inc.,* 618 F.Supp. 1046, 1056–64 (N.D.Ill.1985). The Seventh Circuit reviewed the Supreme Court's decisions in *Blum* and *Delaware Valley I* and determined that they announced a strong presumption against enhancement of fees for superior performance. In the court's words, "one can question whether enhancement for exceptional success is *ever* appropriate." The Seventh Circuit thus concluded that it would not reverse Judge Leighton's decision as an abuse of discretion. See *In re Burlington Northern,* 810 F.2d at 606–08 (emphasis in original).

In affirming Judge Leighton's decision, the Seventh Circuit noted with approval the Judge's method of analyzing the question of whether a party's success is "exceptional." See *id.* at 607. In his opinion, Judge Leighton noted that "exceptional" means "forming an exception; being out of the ordinary; uncommon, rare...." *E.E.O.C.,* 618 F.Supp. at 1058, quoting Webster's Third New International Dictionary (1966). While Judge Leighton did not expand on this definition, he did characterize as exceptional instances where plaintiffs made unusual claims, ones stating novel theories of liability. He rejected analysis of the issue by looking at the size of the award alone, at least without comparing the award to

---

**10.** The parties do not contest the applicability of the enhancement standards set forth in *Blum, Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ("Delaware Valley I") (applying § 1988 standards to fee provision of Clean Air Act, 42 U.S.C. § 7604(d) (1982)), and *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("Delaware Valley II") (same) to the fee-shifting provision of ERISA, 29 U.S.C. § 1132(g)(1).

the numbers of members of the class affected. *Id.* at 1058–60.

■ The intervenors contend that this case was novel. They offer few reasons, however, for this conclusion. Their strongest reason is an unsupported assertion that courts nationwide rely on the decisions rendered in this case. The intervenors fail to indicate how this leads to their conclusion that they should be specially compensated for their efforts.[11] The rest of the intervenors' reasons sound in the nature of the risks Mr. Moenning faced in pursuing their claims. While risk is a factor which the court can—and will—consider, it is not an indicator of the exceptional nature of a legal argument. Many risky positions entail unexceptional legal arguments. Moreover, weighing against the intervenors' argument of "exceptional" success is the rather exceptional disparity between the amount they sought—$7 million—and the amount they recovered: $6,704.00. This court heeds Judge Leighton's admonition to judge not the exceptional qualities of a case solely by the numbers, but the intervening plaintiffs' scant recovery in this case indicates something about the real nature of their victory. In sum, the court concludes that the intervenors have not carried their burden of demonstrating the exceptional nature of their success in this litigation.

The Supreme Court has recognized another ground for enhancing attorney fee awards besides that recognized in *Blum:* the risk of not being paid because of a loss. In a somewhat fractured decision, the Court held in *Delaware Valley II* that a court could consider contingency in setting a reasonable fee under a fee-shifting statute. Speaking for the court,[12] Justice O'Connor made three important observa-

tions about enhancement of fees to compensate for contingency. The Justice noted first that

> District Courts ... should treat a determination of how a particular market compensates for contingency as controlling future cases involving the same market.... Second, at all times the fee applicant bears the burden of proving the degree to which the relevant market compensates for contingency.... [A] court may not enhance a fee award any more than necessary to bring the fee within the range that would attract competent counsel.... Finally, a court should not award any enhancement based on "legal" risks or risks peculiar to the case.

*Delaware Valley II,* 107 S.Ct. at 3090–91 (O'Connor, concurring).

■ The first factor noted in *Delaware Valley II* will not detain the court for long, as neither party has brought other cases involving contingency enhancements for the Chicago market to the attention of the court. The second factor, however, has greater importance. The intervenors have submitted no evidence that Mr. Moenning's contingent arrangement with them—one which gave Mr. Moenning a 45% cut of their remarkable $6,704.00 award—was insufficient in the Chicago market to attract competent counsel. The intervenors indicate that they had little success obtaining representation until they found Mr. Moenning, but this is not the focus of this element of the *Delaware Valley II* test; rather, the inquiry is whether "without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other rele-

---

**11.** Unlike the intervenors, this court took the opportunity to view the cases which refer to the decisions rendered in this case. While as of this date the Shepherd's[R] service lists no references to *Leigh,* 669 F.Supp. 1390, or *Leigh,* 858 F.2d 361, numerous courts have referred to *Leigh v. Engle,* 727 F.2d 113 (7th Cir.1984). While many of these references are cursory, some are substantive. This court cannot divine, however, if the novelty of the latter case stems from the youth of ERISA or the extraordinary nature of the intervenors' effort. Moreover, the attorney for the plaintiffs in this case, Ware Adams, has

challenged who should take credit for the "breakthrough" Mr. Moenning trumpets now. The court notes this not to invite further debate, but rather to emphasize the intervenors' light treatment of the issue of exceptional success.

**12.** The Seventh Circuit has held that Justice O'Connor's concurrence in *Delaware Valley II* is the opinion of the Court on the standards for enhancement of fees on the basis of contingency. See *Skelton v. General Motors Corp.,* 860 F.2d 250, 254 n. 3 (7th Cir.1988).

**1476**

vant market.' " *Id.* at 3091, quoting *id.* at 3089 (White, announcing judgment of the Court). One could attribute the intervenors' lack of obtaining counsel to many things—foremost of which could have been the market's reasonable assessment of the size of the likely award, relative to the hours spent in obtaining it. The intervenors themselves suggest another reason: the presence of a well-heeled adversary. These things have little to do with the narrow purpose of risk enhancement: compensating for deficiencies in the local market for legal services. The intervenors have not submitted any evidence as to the availability of legal services in the Chicago area, and how it is necessary for the court to overcome deficiencies (if any) in this market through enhancing attorneys fees. The court thus denies the intervenors' request for a risk multiplier.

## CONCLUSION

The court orders Libco and Engle to reimburse the Reliable Trust in the amount of $44,763.45. The court also orders Dardick and Zuckerman to reimburse the Trust $44,763.45, unless they submit an amended petition relating to their justifiable retention of part of the Sachnoff fees. The court orders the Trust to reimburse National Boulevard Bank for $5,755.00, and Dardick and Zuckerman for $116,984.74, contingent on their reimbursement of the Sachnoff fees. The court awards the intervening plaintiffs $81,809.29 in fees and costs. The intervening plaintiffs' motion to show cause is denied.